UNITED STATES of America, Appellee,

v.

Amadou DIALLO, also known as Amadou Bailo Diallo, Defendant–Appellant.

No. 74, Docket 93–1864.

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1994.

Decided Nov. 16, 1994.

---

Mark S. Cohen, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., of counsel), for appellee.

David A. Lewis, New York City (The Legal Aid Soc., Federal Defender Div. Appeals Bureau, New York City, of counsel), for defendant-appellant.

Before: VAN GRAAFEILAND, MINER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Defendant Amadou Diallo appeals from a judgment of the United States District Court for the Eastern District of New York (Nicholas Tsoucalas, *Judge,* sitting by designation) convicting him, after a jury trial, of importing heroin into the United States in violation of 21 U.S.C. § 952(a), and possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Diallo arrived at J.F.K. International Airport in New York with fifty-eight heroin-filled condoms in his garment bag and forty more heroin-filled condoms in his digestive tract. His defense was that he thought he was smuggling gold dust, not heroin.

On appeal, Diallo argues that the district court committed reversible error by excluding expert testimony of a commodities analyst, who would have testified about the economic motivation for smuggling gold dust. He also contends that the prosecutor's misconduct during summation deprived him of a fair trial. We hold that it was reversible error to exclude the expert testimony. Accordingly, we do not reach Diallo's second claim of error, and we reverse and remand for a new trial.

## BACKGROUND

Amadou Diallo arrived at Kennedy Airport on a flight from Benin, Africa. A customs official noticed that Diallo appeared nervous, and asked him to open his garment bag. Inside were fifty condoms filled with powder. They smelled of excrement and vomit, suggesting that Diallo had swallowed the condoms. The official then escorted Diallo to a search room where he discovered another eight condoms in Diallo's bag. After a field test showed that the condoms contained heroin, Diallo was arrested and x-rayed. The x-ray revealed foreign bodies in Diallo's digestive track. Diallo eventually passed forty more condoms, for a total of ninety-eight condoms filled with heroin.

Diallo was indicted for importing heroin into the United States in violation of 21 U.S.C. § 952(a), and for possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). At trial, the customs offi-

cial recounted the events leading to Diallo's arrest. In addition, a chemist for the Drug Enforcement Administration ("DEA") testified that the condoms contained a total of 501.4 grams of 84% pure heroin. Another DEA expert testified that the wholesale value of· the heroin was $70,000–$85,000, and that possession of 501 grams of heroin was consistent with distribution, rather than personal use.

In his defense, Diallo testified that he believed he was smuggling gold dust, not heroin. According to Diallo, he ·had flown to Benin on business, where he met a trader in gold and African art. Diallo testified that the trader paid him $1,000 to smuggle gold dust out of Benin.

To buttress his story, Diallo sought to call Jeffrey Christian, a commodities consultant. Based upon his review of Benin's gold export regulations, which he obtained in preparation for Diallo's trial, Christian would have testified, as an expert, that smuggling gold from Benin was more profitable than exporting it legally by complying with Benin's gold export regulations. By way of qualification, Diallo showed that Christian's firm compiled statistics on the world trade in precious metals. Moreover, Christian had advised several African nations on their precious metals export policies.

Upon objection, the district court excluded the proffered testimony. The court challenged Christian's qualifications, noting that Christian had no knowledge of Benin's export regulations before being approached to testify and had never even been to Benin. The court also questioned the need for and relevance of the proffered testimony.

The jury found Diallo guilty, and the district court sentenced him to 70 months' imprisonment. Diallo now appeals.

### DISCUSSION

█ *United States v. Onumonu*, 967 F.2d 782 (2d Cir.1992), is squarely on point. There, the defendant, who was charged with smuggling heroin, claimed that he believed the condoms he had swallowed contained diamonds, not heroin. *Id.* at 784. He sought to introduce the expert testimony of a gemolo-gist, who would have testified about the feasibility and economic motivation for smuggling diamonds by swallowing condoms containing them. The district court excluded the testimony, however, finding that it was neither relevant nor helpful to the jury.

This Court reversed. We held that the gemologist's testimony was relevant and would have .helped the. jury to determine a fact in issue: the likelihood that the defendant really believed he had swallowed condoms containing diamonds, not heroin. *Id.* at 786–88 (citing Fed:R.Evid. 401, 702); *see id.* at 788 ("[T]he average New York juror knows little about ... smuggling diamonds" and "the feasibility and profitability of smuggling diamonds in the alimentary canal."). We concluded that the failure to admit the expert testimony was an abuse of discretion, depriving the defendant "of a fair opportunity to present his case to the jury." *Id.* at 789.

Here, at oral argument, the government conceded that Christian's proffered testimony was relevant under *Onumonu* and would have helped the jury to ascertain Diallo's true state of mind. That leaves only the question of Christian's qualifications, and the government contends that because he was not qualified as an expert, his proposed expert testimony was properly excluded. We disagree.

█ District courts are accorded considerable discretion to determine an expert's qualifications. *See* Fed.R.Evid. 104(a); *United States v. Roldan–Zapata*, 916 F.2d 795, 805 (2d Cir.1990), *cert. denied*, 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *United States v. Lewis*, 954 F.2d 1386, 1390 (7th Cir.1992) (internal quotation marks and citation omitted). A district court's conclusion that an expert is not qualified to testify will be affirmed unless manifestly erroneous. *Roldan–Zapata*, 916 F.2d at 805.

Although Christian had never been in Benin itself, he had advised neighboring African countries about their gold export policies. In so doing, he relied on the same type of information he had in this case—the countries' gold export regulations. With this knowledge, he was able to evaluate the effect Benin's regulations had on exporting gold from Benin. *Cf.* Fed.R.Evid. 703 (expert's testimony must be based on information "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject").

Significantly, the government does not challenge Christian's knowledge of the market price of gold and the profits to be made in trading it. Although Christian was not a gold exporter or trader, he was a commodities analyst, specializing in precious metals, and his consulting company tracked the flow of precious metals around the world. Relying on his expertise in precious metals, Christian could have testified about the market price of gold in the United States and the profit to be made by smuggling gold out of Benin. We therefore hold that the district court erred in not finding Christian qualified as an expert witness.

■ That said, we must review for harmless error, determining whether the error affected Diallo's substantial rights. *See* Fed.R.Crim.P. 52(a) ("Any error ... which does not affect substantial rights shall be disregarded."). If the exclusion of Christian's testimony deprived Diallo of a fair opportunity to present his case to the jury, then the error had a substantial effect on the jury's verdict, and we are compelled to reverse and remand for a new trial. *Onumonu*, 967 F.2d at 789.

To convict Diallo of the crimes with which he was charged, the government had to prove that he knew he was swallowing condoms filled with heroin. Just as in *Onumonu*, "the critical fact in issue ... was whether [Diallo] actually believed that [gold dust], rather than narcotics, w[as] inside the condoms." *Id.* at 787. Without Christian's testimony, Diallo had only his own testimony to support his defense: a stranger in a strange land approached him and paid him to swallow condoms filled with gold dust. Under *Onu-*

*monu,* excluding Christian's testimony deprived Diallo "of a fair opportunity to present his case to the jury[,] was not harmless error, and had a substantial effect on the jury's verdict." *Id.* at 789.

It is noteworthy that the government was permitted to call its own expert (a DEA agent) to establish an economic motive for Diallo to smuggle heroin. Diallo's expert (a commodities analyst), in turn, would have shown an economic motive to smuggle gold. Having allowed the government to call as an expert a DEA agent, who was surely no more qualified as an expert in heroin than Christian was in gold, the district court should have accorded the defendant the same right. Turnabout is fair play, even in the federal courts.

### CONCLUSION

We therefore reverse the judgment of conviction and remand for a new trial. We do not reach Diallo's remaining claim of error.