BANK OF CHINA, NEW YORK BRANCH, Plaintiff–Appellee,

v.

NBM LLC, Yang Mei Corp., GEG International Inc., BOC Company, Non–Ferrous BM Corporation, Shumin Wang, John Chou, Dao Zhong Liu, CBL Ltd. a/k/a CBL Investment Company Grand Cayman, and Century Ltd., Defendants–Counter–Claimants–Appellants,

RCHFINS, Inc., Defendant–Appellant,

Sherry Liu, a/k/a Sherry Ping Liu, Defendant–Third–Party–Plaintiff–Appellant,

Bank of China, Hong Kong Branch, a/k/a Bank of China (Hong Kong) Limited, Kwangtung Provincial Bank, Bank of China, Tokyo Branch, Bank of China, Cayman Islands Branch, PO Sang Bank Ltd., Bank of China, Third–Party–Defendants,

quotation marks omitted)).

C.H.G. Enterprises, Inc., National Budget Merchandise Inc., Sino–Place Alliance, Inc., BHK LLC, Minkang GU, Linda Xiao, Helen Zhou, Patrick Young, John and Jane Does 1–200, Sinco Trust Ltd., a/k/a Synco Trust, IFB Inter Establishment, Sunleaf, Inc., Beda A. Singerberger, Defendants,

Hui Liu, Defendant–Counter–Claimant.

Docket No. 02–9267.

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 2003.

Decided Feb. 17, 2004.

Richard D. Willstatter, Green & Willstatter, White Plains, NY, for Appellants John Chou, Sherry Liu, NBM LLC, Non–Ferrous BM Corp., Yang Mei Corp., and RCHFINS Inc.

Joshua L. Dratel and Marshall A. Mintz, Joshua L. Dratel P.C., New York City, for Appellants Shumin Wang, Dao Zhong Liu, GEG International, Inc., BOC Company, CBL Ltd., a/k/a CBL Investment Company Grand Cayman, and Century Ltd.

Richard A. DePalma and Kathryn M. Ryan, Coudert Brothers L.L.P., New York City, for Appellee.

Before: MCLAUGHLIN and KATZMANN, Circuit Judges, SCHEINDLIN, District Judge.*

SCHEINDLIN, District Judge.

NBM LLC, Yang Mei Corporation, GEG International, Incorporated, BOC Company, Non–Ferrous BM Corporation, Shumin Wang, John Chou, Dao Zhong Liu, CBL Limited, Century Limited, RCHFINS Incorporated, and Sherry Liu ("Appellants") appeal from a decision of

* The Honorable Shira A. Scheindlin, United States District Judge for the Southern District of New York, sitting by designation.

the United States District Court for the Southern District of New York (Denny Chin, *Judge* ) denying them judgment as a matter of law following a jury verdict entered in favor of Bank of China, New York Branch. Bank of China alleged that Appellants, together with numerous non-appealing defendants, engaged in a scheme to defraud the Bank out of millions of dollars.

At trial, the jury found that all defendants were unjustly enriched at Bank of China's expense, committed fraud against Bank of China, and violated section 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The jury further found that defendants NBM LLC and Yang Mei Corporation breached loan agreements with Bank of China, that non-appealing defendant Patrick Young breached his fiduciary duties to the Bank, that defendants John Chou, Sherry Liu, NBM LLC, Yang Mei Corporation, BOC Company, and RCHFINS aided and abetted Young in breaching his fiduciary duties, and that defendants John Chou, Sherry Liu, NBM LLC, Yang Mei Corporation, GEG International, BOC Company, CBL Limited, Century Limited, and RCHFINS violated section 1962(c) of RICO. The jury awarded approximately $132 million to Bank of China, including $35.4 million in compensatory damages and a total of $96.4 million in punitive damages.

On September 11, 2002, Judge Chin denied defendants' motion to set aside the verdict. *See Bank of China, New York Branch v. NBM, L.L.C.,* No. 01 Civ. 0815, 2002 WL 31027551 (S.D.N.Y. Sept.11, 2002). On September 13, 2002, the District Court entered judgment in favor of Bank of China, against NBM, Yang Mei, RCHFINS, John Chou, Sherry Liu, GEG, BOC, CBL, Century, Shumin Wang, Dao Zhong Liu, Helen Zhou, Hui Liu, Patrick Young, National Budget, CHG, BHK, Sino–Place, and Sunleaf, jointly and severally, in the amount of $106,361,504.40. This amount equaled $35,453,834.80 in compensatory damages, trebled pursuant to section 1964(c) of RICO.[1] Appellants now appeal, arguing that the District Court committed various errors that deprived the defendants of a fair trial.

## I. BACKGROUND

Bank of China alleged that the defendants defaulted on their loan obligations and perpetrated a massive fraud on Bank of China, beginning in 1991 and continuing until mid–2000. In sum, Bank of China claimed that various defendants borrowed huge sums from the Bank through false and misleading representations, and in many cases, forged documents. In violation of representations and contractual undertakings, the borrowed funds were converted into different currencies and transferred into accounts held by other defendants, which were represented to the Bank to be independent businesses; in fact, the "third-party businesses" were controlled by the borrowing defendants. The borrowed funds were then falsely represented to Bank of China to be "trade debt" owed to the borrowing defendants, thus creating the illusion that the borrowing defendants and the "third-party businesses" were thriving businesses with sufficient cash flows to sustain the borrowing limits approved by the Bank. The borrowed funds were also disguised as "collateral" for further loans, creating further indebtedness to the Bank. Finally, additional monies were drawn down against

---

**1.** In its Memorandum and Order dated September 10, 2002, the District Court explained that this was the maximum amount the plaintiff could recover on any of the causes of action because the plaintiff could not recover both punitive damages, and treble damages.

letters of credit issued under the increased credit facilities by the presentation of false and forged documents for non-existent transactions. The success of the fraud was dependent, in part, on bribes paid to defendant Patrick Young, then a deputy manager at Bank of China who handled defendants' transactions with the Bank.

## II. DISCUSSION

Appellants argue that there was insufficient evidence to support the jury's verdict, and that the District Court committed numerous errors constituting abuses of discretion, thereby depriving the defendants of a fair trial. We conclude that two of Appellants' arguments are meritorious, and address each of those arguments in turn.

### A. Jury Instructions

On the last day of trial, defendants requested that the Court instruct the jury that if senior Bank management knew of defendants' activities, that knowledge must be imputed to the Bank. As a result of its own research, the District Court concluded that defendants' proposed instruction misstated the law, and that the law was, in fact, the opposite of defendants' proposition. In so finding, the District Court relied on *United States v. Rackley*, 986 F.2d 1357, 1361 (10th Cir.1993) (upholding bank fraud conviction where the owner and director of the bank knew of the fraudulent activity); *United States v. Weiss*, 752 F.2d 777, 783–84 (2d Cir.1985) (upholding mail fraud conviction where the defendant argued that the illegal scheme was "presumptively used for the benefit of the corporation"); *United States v. Yarmoluk*, 993 F.Supp. 206, 209 (S.D.N.Y. 1998) ("[A]n institution may be defrauded

even if its employees allow or participate in the fraudulent practices."). The District Court noted that it relied on criminal cases rather than civil cases, but found this distinction irrelevant because there is no difference between criminal bank fraud and bank fraud as a predicate act in a civil RICO claim. *See* Trial Transcript ("Tr." at 1744–45). The District Court also observed that general agency law would not support the defendants' proposed instruction because it is well established that when an agent acts adversely to its principal, the agent's actions are not imputed to the principal. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir.2000).

The District Court therefore instructed the jury as follows:

> [T]he bank is also an entity, a financial institution, as opposed to an individual, and it also must act through natural persons as its agents and employees. Now, certain defendants have argued that certain agents and employees of the bank knew of the true nature of the transactions in question, and that therefore the bank could not have been the victim of fraud. I instruct you that an institution may be defrauded, even if its agents and employees permitted or participated in the fraud. Where a financial institution is defrauded by an outsider working with agents and employees of that institution, it is the institution, not its agents or employees, that is the victim of the fraud. Accordingly, even if certain officers of the bank knew the true nature of the transactions, the bank nevertheless could have been defrauded. It is up to you, of course, to determine whether the bank has proven fraud by clear and convincing evidence.[2]

Tr. at 1872.

Appellants maintain that this instruction was erroneous because it relieved the

---

2. Although the District Court derived this instruction from criminal bank fraud law, the

Bank of its burden of proving reliance. Specifically, Appellants argue that the instruction precluded the jury from considering their defense that the actions complained of were sanctioned and authorized by the Bank's officers, and that therefore the Bank could not have detrimentally relied on any of the defendants' representations.

### 1. Standard of Review

■ "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994). "An instruction must [ ] allow the jury to adequately assess evidence relied on by a party." *District Council 37, Am. Fed'n of State, County & Mun. Employees, AFL–CIO v. New York City Dep't of Parks and Recreation,* 113 F.3d 347, 355 (2d Cir.1997) (citing *Carvel Corp. v. Diversified Mgmt. Group,* 930 F.2d 228, 231–32 (2d Cir.1991)). "An erroneous instruction requires a new trial unless the error is harmless. An error is harmless only if the court is convinced that the error did not influence the jury's verdict. If an instruction improperly directs the jury on whether the plaintiff has satisfied her burden of proof, it is not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 115–16 (2d Cir.2000) (citations and quotation marks omitted); *see also Girden v. Sandals Int'l,* 262 F.3d 195, 203 (2d Cir.2001) ("A new trial is required if, considering the instruction as a whole, the cited errors were not harmless, but in fact prejudiced the objecting party."). Therefore, we will reverse a judgment because of an error in the jury instructions if the charge given was incor-

rect and did not sufficiently cover the "essential issues." *Carvel,* 930 F.2d at 231. *See also Plagianos v. Am. Airlines, Inc.,* 912 F.2d 57, 59 (2d Cir.1990) (when jury instructions, "taken as a whole," give the jury "a misleading impression or inadequate understanding of the law, a new trial is warranted"). We review *de novo* a district court's jury instructions. *Anderson,* 17 F.3d at 556.

### 2. Civil RICO Plaintiffs Alleging Fraud As Predicate Acts Must Establish Reliance

■ The civil RICO statute, 18 U.S.C. § 1964(c), specifies that "[a]ny person injured ... by reason of a violation of [§ 1962] may sue therefor ... and ... recover threefold the damages he sustains." In *Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), the Supreme Court held that the "by reason of" language in section 1964(c) means that in order to prevail on a civil RICO claim, the plaintiff must show that the defendant's violation was the "proximate cause" of the plaintiff's injury. *See id.* at 268. It is well established in this Circuit that where mail fraud is the predicate act for a civil RICO claim, the proximate cause element articulated in *Holmes* requires the plaintiff to show "reasonable reliance." In *Metromedia Co. v. Fugazy,* 983 F.2d 350 (2d Cir.1992), decided after *Holmes,* we noted that, "[i]n the context of an alleged RICO predicate act of mail fraud, we have stated that to establish the required causal connection, the plaintiff was required to demonstrate that the defendant's misrepresentations were relied on." *Id.* at 368 (citations omitted).

Several of our sister Circuits have concluded that where common law, wire or securities fraud are the predicate acts for

---

Court gave the instruction to the jury in the context of the common law fraud instruction

rather than the civil RICO bank fraud instruction.

a civil RICO action, the plaintiff must establish "reasonable reliance." *See Summit Props. Inc. v. Hoechst Celanese Corp.,* 214 F.3d 556, 562 (5th Cir.2000) ("when civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is a commonsense liability limitation"); *Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.,* 29 F.3d 1283, 1286 (8th Cir.1994) ("In order to establish injury to business or property 'by reason of' a predicate act of mail or wire fraud, a plaintiff must establish detrimental reliance on the alleged fraudulent acts."); *Caviness v. Derand Res. Corp.,* 983 F.2d 1295, 1305 (4th Cir.1993) ("claim under [civil] RICO requires both reliance and damage proximately caused by the violation").[3] However, neither this Circuit, nor any other Circuit or district court, has explicitly addressed whether the plaintiff must show "reasonable reliance" where the predicate act alleged is bank fraud.[4]

■ Bank fraud is a somewhat different type of fraud than common law, securities, mail and wire fraud because the bank fraud statute was designed to protect the integrity of the federally insured banking system. *See Rackley,* 986 F.2d at 1361 ("Section 1344 was intended to reach a wide range of fraudulent activity that undermines the integrity of the federal banking system." (citations omitted)); *see also* S.Rep. No. 98–225, at 377 (1983) *reprinted in* 1984 U.S.C.C.A.N. 3182, 3517 (section 1344 was "designed to provide an effective vehicle for the prosecution of frauds in which the victims are financial institutions that are federally created, controlled, or insured."). However, the fact that the criminal bank fraud statute serves to protect the federal banking system does not affect the *Holmes* "proximate cause" requirement: plaintiffs who bring civil actions pursuant to section 1964(c) are required to establish that the defendants' actions were the proximate cause of plain-

---

**3.** In crafting jury instructions, many district courts rely on *Modern Federal Jury Instructions. See* Leonard B. Sand, et al., *Modern Federal Jury Instructions* (2003). Yet, despite *Holmes* and the trend among the Circuits interpreting *Holmes* to require a showing of "reasonable reliance" in civil RICO actions predicated on fraud, *Modern Federal Jury Instructions* does not address *Holmes* or its progeny. *See id.* ch. 84. Instead, the introductory section on civil RICO in *Modern Federal Jury Instructions* merely notes that section 1964(c) permits persons injured by violations of section 1962 of Title 18 to bring a civil action. *See id.* ch. 84.01. The treatise goes on to provide model instructions for civil actions predicated on sections 1962(a)-(d); none of these model instructions address section 1964(c) or its requirements. Because the *Holmes* "proximate cause" requirement is derived from section 1964(c), not section 1962, courts relying exclusively on the current edition of *Modern Federal Jury Instructions* will fail to instruct juries with respect to the "proximate cause" requirement. Though this failure may not always constitute reversible error, *see, e.g., Me-*

*tromedia,* 983 F.2d at 368 (noting that "it would have been preferable to have included an instruction that informed the jury of the relationship between causation and reliance," but declining to reverse the jury verdict because there was substantial evidence in the record that the plaintiff relied on the defendant's representations), it would be wise for district courts to include a charge requiring a plaintiff to prove that she reasonably relied to her detriment on the defendant's fraudulent acts or omissions.

**4.** The bank fraud statute provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

tiffs' injuries regardless of whether the predicate act alleged is bank fraud or some other conduct defined as a RICO predicate act in section 1961(A) of Title 18 of the United States Code. This result is perfectly reasonable. Unlike a *criminal* bank fraud prosecution, which serves to protect the integrity of the federally insured banks, a *civil* RICO action predicated on bank fraud is intended to compensate the plaintiff-victim for its losses. If the plaintiff-victim cannot establish that the defendants' actions caused the losses, no recovery is appropriate or warranted.

We therefore now hold that in order to prevail in a civil RICO action predicated on any type of fraud, including bank fraud, the plaintiff must establish "reasonable reliance" on the defendants' purported misrepresentations or omissions. Thus, Bank of China was required to prove that it reasonably relied on defendants' purported misrepresentations—i.e., the representations that the defendants made to the Bank in order to obtain the loans.

### 3. The Jury Instructions Were Erroneous

The District Court's instruction to the jury that a bank may be defrauded regardless of whether its officers and employees are aware of, and participate in the fraud, was derived from criminal bank fraud case law. This was error. There is a conceptual difference between criminal bank fraud and bank fraud as a predicate for a civil RICO action. In a criminal bank fraud prosecution, the Government need not prove that any individual or institution relied on the defendant's purported misrepresentations, whereas in a civil RICO action predicated on bank fraud, the plaintiff must demonstrate "reasonable reliance." Nowhere did the District Court instruct the jury that in determining whether the defendants had committed a civil RICO violation,[5] it must consider and determine whether or not the Bank reasonably relied on the defendants' purported misrepresentations.[6]

Moreover, because the erroneous instruction derived from criminal bank fraud law was inexplicably given as part of the common law fraud charge [7] rather than the civil RICO charge, it tainted the fraud charge.[8] In its instructions on common law fraud, the District Court instructed the jury that Bank of China was required to prove "reliance." However, this instruction *immediately* preceded the erroneous instruction derived from criminal bank fraud case law, which essentially eviscerated the reliance requirement—the

---

5. The alleged predicate acts were mail, wire and bank fraud. Though we previously have held that a plaintiff seeking to recover in a civil RICO action predicated on mail fraud must establish "reasonable reliance" by the plaintiff, *see Metromedia Co.*, 983 F.2d 350, the District Court did not so instruct the jury.

6. The District Court instructed the jury that in order to prevail on its RICO claims, the Bank was required to prove that its injury was "proximately caused by the defendants in violation of RICO. An injury or damage is proximately caused when a wrongful act played a substantial part in bringing about or actually causing injury or damage, and that the injury or damage was either a direct result or a

reasonably probable consequence of the act." Tr. at 1886. However, the District Court failed to instruct the jury that in order to establish that the defendants' acts proximately caused its injuries, the Bank was required to prove that it "reasonably relied" on the defendants' fraudulent acts.

7. Bank of China's common law fraud claim was separate from its civil RICO claim, and was not alleged as a predicate act.

8. Of course, the instruction would have been incorrect even if given as part of the civil RICO charge because it misstated the law, but its effect would not have been as damaging.

jury was told that Bank of China was required to prove "reliance" for the Bank to prevail on the common law fraud claim, but it was *also* told that even if the officers and employees of the Bank knew of and participated in defendants' fraudulent activities, and therefore could not have relied on the alleged misrepresentations in granting the loans, the Bank nonetheless could be defrauded. *See* Tr. at 1867–1872; *supra* Part II.A.

■ These two instructions are at best confusing, and at worst irreconcilable. As an entity, the Bank acts only through its officers and employees.[9] *See Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 166, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001); *Suez Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 101 (2d Cir.2001). Thus, the Bank cannot rely on misrepresentations unless its agents or employees rely on those misrepresentations. It follows that if the Bank's officers were aware of, and participated in the defendants' allegedly fraudulent activities, then neither they, *nor the Bank* relied on the purported misrepresentations in granting loans to the defendants. By instructing the jury that the Bank could be defrauded even if its employees knew of or participated in the defendants' scheme, the District Court therefore relieved Bank of China of its burden to prove "reasonable reliance," an element of common law fraud and, as we now hold, the RICO predicate acts of mail, wire and bank fraud.

■ Finally, the District Court correctly noted, during a conference with counsel, that when an agent acts adversely to its principal, the agent's actions and knowledge are not imputed to the principal. *See* Tr. at 1741; *see also Wight,* 219 F.3d at 87 ("[T]he adverse interest exception rebuts the usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal. . . . [M]anagement misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation."). But the jury was never instructed on this fundamental principle. The doctrine, referred to as the "adverse interest exception," is entirely consistent with our present holding because it "is narrow and applies only when the agent has 'totally abandoned' the principal's interests." *Id.* (quoting *In re Mediators, Inc.,* 105 F.3d 822, 827 (2d Cir.1997)). Thus, if Bank of China's officers or employees were aware of, or participated in, defendants' scheme, their knowledge would be imputed to the Bank *unless* the employees' actions exhibited a "total abandonment" of Bank of China's interests. This clearly raises an issue of fact for the jury to decide. An appropriate instruction, given in conjunction with a "reasonable reliance" instruction for both the common law fraud and civil RICO claims, should have guided the jury in making this determination.

### 4. The Error Necessitates Reversal

■ Considering the charge as a whole, the District Court's instructions misstated the law. The charge was erroneous be-

---

9. The District Court instructed the jury that certain of the *defendants* are corporations, and that as corporations, those defendants act only through their agents or employees. *See* Tr. at 1871. Although the District Court did note that the *plaintiff* is also an entity that acts only through its agents and employees, this instruction had essentially no effect be-

cause it was given in the context of the erroneous instruction—the jury was instructed that the Bank acts only through its agents or employees, but the Bank nonetheless could rely on representation and be defrauded even if the Bank's agents and employees did not rely on the misrepresentations. *See* jury instruction, *supra* Part II.A.

cause it failed to inform the jury of an essential element of a civil RICO action predicated on fraud, and inaccurately instructed the jury with respect to the common law fraud claims. As a result, Bank of China was not required to sustain its burden of proof, and defendants were not able to put their defense before the jury. Under these circumstances, we cannot conclude that the error was harmless because we are not "convinced that the error did not influence the jury's verdict." *Gordon*, 232 F.3d at 115–16.

At trial, defendants introduced evidence that throughout the period they obtained loans from Bank of China, they socialized extensively with officers of the Bank and spent time with the officers in the Cayman Islands. According to defendants, these officers were intimately familiar with the defendants' transactions. Defendants presented further evidence that essentially every manager and deputy manager with whom the defendants dealt at the New York Branch was terminated, demoted or transferred out of that Branch following the Bank's internal investigation of defendants' transactions. *See* Tr. 435–50, 460–63, 486–90, 648–49. Bank of China did not call the transferred and terminated employees as witnesses, and because all of the employees are outside the District Court's subpoena power, the defendants were unable to call them. Huang Yangxin, the only Bank of China employee who testified, did not work in the New York Branch during most of the period that the defendants obtained loans from the Bank, and therefore he had no knowledge of various meetings regarding the transactions that defendants contend they had with New York Branch officers. Thus, there certainly was evidence from which the jury could have inferred that the

Bank's employees or agents were aware of the defendants' purportedly fraudulent representations, and that therefore, the Bank did not rely on the representations. However, the jury charge did not require Bank of China to prove that it relied on the misrepresentations or that the officers were acting *ultra vires*. As a result of the erroneous jury instruction, the jury was precluded from even considering this defense. Thus, because the jury charge "d[id] not adequately inform the jury on the law," *Anderson*, 17 F.3d at 556, and "improperly direct[ed] the jury on whether the plaintiff [ ] satisfied [its] burden of proof, it is not harmless error . . .". *Gordon*, 232 F.3d at 115–16 (citations and quotation marks omitted).

Finally, the error is particularly troubling in the context of a civil RICO action, where defendants are subject to treble damages. Accordingly, we reverse the judgment and remand for a new trial.

## B. Testimony of Huang Yangxin

At trial, the District Court allowed plaintiff's witness Huang Yangxin, a Bank of China employee, to testify to the following: (1) that certain transactions between defendants NBM and GEG did not comport with the business community's understanding of normal, true, trade transactions between a buyer and seller; (2) the concept of a "trust receipt," and how it works in the context of an international commercial transaction; and (3) that it is considered fraud when an importer presents a trust receipt to a bank to obtain a loan knowing that there are no real goods involved. The District Court found that Huang's testimony was admissible based on his many years of experience in international banking and trade,[10] and concluded that the

---

10. Huang testified for several days, and his testimony spans nearly 1000 pages of the trial transcript. Defendants objected to much of the testimony, including Huang's description

testimony satisfied the requirements for lay opinion testimony under Federal Rule of Evidence 701.[11]

■ The admission of this testimony pursuant to Rule 701 was error because it was not based entirely on Huang's perceptions; the District Court abused its discretion to the extent it admitted the testimony based on Huang's experience and specialized knowledge in international banking. Subsection (c) of Rule 701, which was amended in 2000, explicitly bars the admission of lay opinions that are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701(c). The Advisory Committee explained that the purpose of Rule 701(c) is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed.R.Evid. 701 advisory committee's note. That is, in part, what happened here.

Testimony admitted pursuant to Rule 701 must be "rationally based on the perception of the witness." Fed.R.Evid. 701(a). To some extent, Huang's testimony was based on his perceptions. As a Bank of China employee, Huang was assigned to investigate defendants' activities

at the tail-end of their scheme and after Bank of China stopped doing business with them. Huang's senior role at the Bank and his years of experience in international banking made him particularly well-suited to undertake such an investigation and was likely a factor in the Bank's decision to assign the task to him. The fact that Huang has specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise in international banking. "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his [ ] position in the business." Fed.R.Evid. 701 advisory committee's note. Thus, to the extent Huang's testimony was grounded in the investigation he undertook in his role as a Bank of China employee, it was admissible pursuant to Rule 701 of the Federal Rules of Evidence because it was based on his *perceptions. See United States v. Glenn*, 312 F.3d 58, 67 (2d Cir.2002) ("[A] lay opinion must be rationally based on the perception

of a "trust receipt" and his conclusions concerning the defendants' transactions. At times, defendants did not specify the nature of their objections, including their objections to much of the "trust receipt" testimony, and the District Judge did not explain why he allowed the testimony. *See* Tr. at 247–50. In overruling one of the objections, the District Judge noted that Huang had years of experience in the international banking business. *See id.* at 259. However, he also said that Huang's testimony was "common sense," thus suggesting that he may not have relied entirely on Huang's experience in international banking in overruling the objection. *See id.* In any event, because defendants consistently objected to the testimony, their objections were preserved. Moreover, although the district

judge's reasoning for allowing some of the testimony is not entirely clear, we conclude that admission of the testimony was an abuse of discretion because the testimony was, in large part, not clearly based on Huang's perceptions.

11. Federal Rule of Evidence 701 states: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge...."

of the witness. This requirement is the familiar requirement of first-hand knowledge or observation." (citations and quotations omitted)).

■ However, to the extent Huang's testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was error. Thus, Huang's explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted. Of course, these opinions may,

nonetheless, have been admissible pursuant to Rule 702 because "[c]ertainly it is possible for the same witness to provide lay and expert testimony in a single case." Fed.R.Evid. 701, advisory committee's note (citing *United States v. Figueroa–Lopez*, 125 F.3d 1241, 1246 (9th Cir.1997)). But before such testimony could have been proffered pursuant to Rule 702, Bank of China was obligated to satisfy the reliability requirements set forth in that Rule, and disclose Huang as an expert [12] pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure.[13]

■ We have not previously addressed the consequence of a District Court's im-

---

12. The failure to identify Huang as an expert is particularly troubling because the District Court ruled that defendants could not call an expert unless Bank of China called its disclosed expert. This ruling was the result of defendants' failure to adhere to the District Court's deadline for disclosing experts—defendants' disclosure was a month late, and did not adhere to the expert disclosure requirements set forth in Rule 26 of the Federal Rules of Civil Procedure. By motion *in limine*, Bank of China sought to preclude defendants from calling an expert because of the untimely and deficient disclosure. The District Court denied the motion, but ruled that because of defendants' failure to timely and properly disclose, their expert would only be permitted to testify if Bank of China's expert testified. Presumably because of the ruling, Bank of China elected not to call the expert that it had disclosed, and therefore defendants were barred from calling their expert. Thus, had Huang properly been disclosed as an expert, defendants would have been permitted to call their expert pursuant to the District Court's ruling.

13. Notably, although defendants were entitled to *notice*, pursuant to Rule 26(a)(2)(A), that Huang would testify as an expert, they were not entitled to an *expert report* under Rule 26(a)(2)(B). This Rule only requires "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" to prepare a

signed written report. Where the witness is not specially retained or employed to give expert testimony, or does not regularly give expert testimony in his or her capacity as an employee, no expert report is required. *See Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97 Civ. 0607, 2001 WL 21256, at * 1 (S.D.N.Y. Jan.9, 2001) ("It is well established that Fed.R.Civ.P. 26(a)(2) only requires a written report for a witness retained or specially employed to provide expert testimony in the case, or whose duties as a party's employee regularly involve giving expert testimony."); *Peck v. Hudson City Sch. Dist.*, 100 F.Supp.2d 118, 121 (N.D.N.Y.2000) ("The plain language of Fed.R.Civ.P. 26(a)(2) only requires a written report for a witness retained or specially employed to provide expert testimony in the case, or whose duties as a party's employee regularly involve the giving of expert testimony."); *Kent v. Katz*, No. 2:99 Civ. 189, 2000 WL 33711516, at *1 (D.Vt. Aug.9, 2000) ("The structure of Rule 26(a)(2) provides a clear distinction between the retained class of experts and the unretained class of experts.... This distinction protects experts from preparing reports when they are not retained to do so and when it is outside the scope of their regular duties." (citations and quotations omitted)); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y.1995) (same). Because Huang was not specially retained to provide expert testimony, and his duties as an employee of Bank of China do not regularly include giving expert testimony, Rule 26(a)(2)(B) does not apply.

proper admission of evidence in violation of Rule 701(c).[14]  However, at least one other Circuit has concluded that erroneous admission of evidence in violation of Rule 701(c) is, like other erroneous evidentiary rulings, reviewed under the "harmless error" standard. *See United States v. Griffin,* 324 F.3d 330, 347–48 (5th Cir.2003) (expert testimony admitted erroneously in violation of Rule 701(c) subject to "harmless error" analysis).  Moreover, we have consistently held that erroneous evidentiary rulings, including rulings regarding expert testimony, are reviewed under the "harmless error" standard. *See Parker v. Reda,* 327 F.3d 211, 213 (2d Cir.2003) ("This Court will order a new trial only if the introduction of inadmissible evidence was a clear abuse of discretion and was so clearly prejudicial to the outcome of the trial that we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." (quotations omitted)); *Hygh v. Jacobs,* 961 F.2d 359, 364–65 (2d Cir.1992) (erroneous admission of expert testimony reviewed under the "harmless error" standard); *cf. United States v. Diallo,* 40 F.3d 32, 35 (2d Cir.1994) (district court's erroneous conclusion that a witness was not qualified as an expert reviewed under the "harmless error" standard).  We therefore conclude that the District Court's improper admission of Huang Yangxin's testimony in violation of Rule 701(c) is reviewed under the "harmless error" standard. However, because we find that the jury verdict must be reversed because of the error in the jury instructions, we need not consider whether the District Court's evidentiary error was harmless.

## III.  Conclusion

For the foregoing reasons, the judgment is VACATED and REMANDED to the District Court for further proceedings consistent with this Opinion.

---

14.  *Weinstein's Federal Evidence* cites no case law regarding the application of amended Rule 701, or the effect of improper admission of evidence in violation of Rule 701(c).  *See Weinstein's Federal Evidence* § 701.03[4].  However, *Weinstein's* explains that,

   [t]he purposes of the amendment are twofold.  First, it ensures that evidence qualifying as expert testimony under Rule 702 will not evade the reliability scrutiny mandated by the Supreme Court's *Daubert* decision and the 2000 amendment to Rule 702.  Second, it also provides assurance that parties will not use Rule 701 to evade the expert witness pretrial disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure and Rule 16 of the Federal Rules of Criminal Procedure.

*Id.* § 701.03[4][b].