**CHARRON, et al., Plaintiffs,**

v.

**PINNACLE GROUP N.Y. LLC and Joel Wiener, Defendants.**

No. 07 Civ. 6316(CM)(RLE).

United States District Court, S.D. New York.

April 27, 2010.

Andrew A. Jacobson, Melissa L. Dickey,
Richard F. Levy, Shelley K. Dufford, Jenner

& Block, LLP, Chicago, IL, Anna Baldwin, Jenner & Block, LLP. Washington, DC, Carletta Flora Higginson, Katya T.P. Jestin, Luke Patrick McLoughlin, Jenner & Block LLP, New York, NY, Deepa Janakiraman, Gibson, Dunn & Crutcher, LLP, Elizabeth Valentina, Susan Joan Kohlmann, Jenner & Block LLP, Los Angeles, CA, for Plaintiffs.

Johanna Coats, Mitchell Alan Karlan, New York, NY, for Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

McMAHON, District Judge.

### *INTRODUCTION*

In this civil RICO action, plaintiffs Theodore and Marjorie Charron (the "Charrons"), Andres Mares–Muro ("Mares–Muro"), Raymond–Andrew Stahl–David ("Stahl–David") and Kim Powell ("Powell") (collectively, the "Named Plaintiffs") allege that a particular landlord in New York City—Pinnacle Group N.Y. LLC ("Pinnacle Group")—acting in concert with Pinnacle Group's Chief Executive Officer, Joel Wiener ("Wiener" and, with Pinnacle Group, "Defendants" or "Pinnacle"), has been operated through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). The Named Plaintiffs further allege that Defendants' deceptive acts and practices have violated the New York Consumer Protection Act ("NYCPA"), N.Y. Gen. Bus. L. § 349.

The Named Plaintiffs, on behalf of themselves and other similarly situated tenants (collectively, "Plaintiffs"), seek to end Defendants' allegedly fraudulent scheme of demanding and collecting rents in amounts beyond those permitted under New York law and with the goal of illegally increasing regulated rents and/or evicting tenants who are entitled to rent regulation. They accuse Defendants of systemic fraud, which led to the commencement of summary dispossess proceedings against at least 5,000 of Pinnacle's roughly 20,000 tenants between 2004 and 2006. Pinnacle's activity also was the subject of an audit and enforcement action initiated by the Office of the New York State Attorney General ("OAG"). In addition to declaratory and injunctive relief, Plaintiffs seek monetary damages, including treble damages under 18 U.S.C. § 1964(c).

The Named Plaintiffs now move to certify a class of tenants who have leased a Pinnacle apartment at any time since July 11, 2004. They assert that certification is proper under both subsections (b)(2) and (b)(3) of Federal Rule of Civil Procedure 23 and that, at the very least, the Court should certify a liability-only "issues" class pursuant to Rule 23(c)(4). For the reasons stated herein, the motion for class certification is granted in part and denied in part.

### I. The Alleged Scheme

The "Pinnacle Enterprise" is alleged to consist of several companies that are directly controlled by defendant Wiener and his family, including Pinnacle Group, Pinnacle Management Co., LLC and Secure Watch 24; the Praedium Group LLC, a real estate investment firm that advertises its strategy as "aggressively mana[ging] the current tenant/leasing base" of its properties; and numerous limited liability companies, each of which holds title to a particular apartment building and is jointly owned by other limited liability companies and/or partnerships among Wiener and various Praedium principals. (Second Amended Class Action Complaint, Oct. 24, 2007 (the "Complaint"), ¶¶ 43–50, 174.)

The Pinnacle Enterprise allegedly acquired hundreds of apartments throughout New York City between 1999 and 2006, during the boom real estate market. After securing the apartments, the Enterprise engaged in a scheme to convert the rent-regulated apartments into condominiums and market-rate apartments (an apartment is "rent-regulated" if it is, under New York's rent-regulation laws, rent-stabilized or rent-controlled). Pinnacle's scheme is alleged to be multi-faceted—to accomplish its goals of charging illegally inflated rents and forcing rent-regulated tenants to move out, so that their apartments could be converted into unregulated, owner-occupied units (condos or co-ops), the Pinnacle Enterprise allegedly

did all of the following (albeit at different times and in connection with different apartments):

(1) misrepresented the legally chargeable rent;

(2) misrepresented the status and cost of renovations to apartments;

(3) misrepresented and refused to acknowledge tenants' succession rights under leases;

(4) filed merit less eviction suits;

(5) engaged in other harassing conduct; and

(6) provided false information to government agencies.

The Enterprise purportedly engaged in such fraud and harassment to circumvent New York's rent regulation laws—to get tenants out of apartments that could then be deregulated, and to obtain rents in occupied apartments in excess of those legally permitted.

For a fuller description of the Complaint, the reader should refer to this Court's decision and order granting in part and denying in part Defendants' motion to dismiss. *See Buyers & Renters United to Save Harlem v. Pinnacle Group N.Y. LLC,* 575 F.Supp.2d 499 (S.D.N.Y.2008) (McMahon, J.) (Docket No. 32).

## II. The Pending Motion for Class Certification

The Named Plaintiffs "move to certify a damages class and injunctive class," pursuant to Rules 23(b)(3) and (b)(2), consisting of: "All persons who, at any time from July 11, 2004 to the date of certification, leased an apartment in the City of New York directly or indirectly owned in whole or in part by the Pinnacle Enterprises." (Pls.' Mem. in Supp. of Mot. for Class Cert., June 30, 2009 ("Pls.' Mem."), at 2, 5; Compl. ¶ 150.) The Named Plaintiffs assert that, if (b)(3) certification is inappropriate as a result of individualized questions regarding damages and causation, the Court should certify a class pursuant to Rule 23(c)(4) to address the common liability issues of Plaintiffs' RICO and NYCPA claims. (*See* Pls.' Mem. at 22.)

The Named Plaintiffs further propose dividing the overarching class into four separate subclasses of Pinnacle tenants: those victimized by Defendants' misrepresentations regarding the cost of renovations and capital improvements ("Subclass 1"); tenants victimized by Defendants' misrepresentations regarding the prior rental history of their apartments ("Subclass 2"); tenants victimized by Defendants' refusal to honor their succession rights ("Subclass 3"); and tenants victimized by Defendants' misrepresentations that they had not paid rent, made for the purpose of commencing baseless eviction proceedings ("Subclass 4"). (*See id.* at 5–8.) Each of the Named Plaintiffs purports to represent one or more of the proposed subclasses.

Since the certification motion was filed, four of the nine originally named plaintiffs— Anthony Casasnovas, Karen Flannagan, Russell Taylor and Diane Trummer—have settled their claims against Defendants. (Ltr. from Pls.' Counsel to Court, Jan. 26, 2010 (Docket No. 95), at 1.) As a result, Subclass 3 is presently without a named plaintiff to represent it. (*Id.* at 2.) As for the other three subclasses, the Charrons represent putative Subclass 1, Mares–Muro represents putative Subclass 2, and Powell and Stahl–David represent putative Subclass 4. The Named Plaintiffs propose amending their Complaint to add a new named plaintiff to represent Subclass 3, after the Court has ruled on the class certification motion. (*Id.* at 2.)

As will be discussed below, there is considerable merit to Defendants' argument that certification is inappropriate because each Pinnacle tenant's situation is different. Defendants contend that this action is, in essence, a collection of individualized landlord-tenant disputes, which inevitably involve different factual circumstances—different apartments, different leases, different alleged misrepresentations, different modes of alleged harassment, and so forth.

Yet, contrary to Defendants' assertion, there *is* something that binds together the rent-regulated tenants inhabiting Pinnacle apartments. While the Pinnacle Enterprise may use different tactics on different tenants, all rent-regulated tenants—if Plaintiffs'

allegations are true—either have been subjected to, or are at risk of being subjected to, the same general course of allegedly fraudulent and harassing conduct, the same pattern of racketeering.

The appropriate resolution at this stage is to certify (1) an injunctive class pursuant to Rule 23(b)(2); and (2) a damages-seeking class pursuant to Rule 23(b)(3), but limited pursuant to Rule 23(c)(4) to resolving common liability issues—i.e., whether Defendants' alleged scheme violated RICO and/or the NYCPA—with the Court to reevaluate its options for managing the damages portion of the action in the event that Defendants' liability is established.

### DISCUSSION

## I. Legal Standards for Class Certification

A court may certify a class action if all four prerequisites of Rule 23(a) and all the requirements of at least one of the subsections of Rule 23(b) are satisfied. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir.2008).

The Supreme Court has held that district courts must conduct a "rigorous" analysis of whether the prerequisites of Rule 23 are met before certifying a class. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Recently, the Second Circuit clarified what a rigorous analysis entails:

(1) A district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met;

(2) Such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met;

(3) The obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement;

(4) In making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and

(5) A district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.2006) (*"In re IPO"*).

The requirements for class certification are well settled. First, the putative class must satisfy all four "prerequisites" of Rule 23(a), which are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see In re IPO*, 471 F.3d at 32; *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773, 210 WL 1221809, at *2, 2010 U.S. Dist. LEXIS 30590, at *3–4 (S.D.N.Y. Mar. 29, 2010).

In addition, at least one of the three subdivisions of Rule 23(b) must be satisfied. Fed. R.Civ.P. 23(b); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 484 (2d Cir.1995). In this case, the Named Plaintiffs move to certify a class seeking injunctive relief and damages, and argue that certification is proper under both Rules 23(b)(2) and (b)(3). Rule 23(b)(2) requires that:

the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed.R.Civ.P. 23(b)(2). A class action is maintainable under Rule 23(b)(3) if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

The Court will first address the Named Plaintiffs' request· for certification of a(b)(2) class of persons seeking injunctive relief, and then turn to the more complicated question of whether it is also appropriate to certify a(b)(3) class (or subclasses) of persons seeking monetary damages.

## II. Certification of a Rule 23(b)(2) Class

### A. Redefinition of the Proposed Class

Before turning to the Rule 23 requirements, it is necessary to address a problem Plaintiffs. *Cf. Wright v. Giuliani,* No. 99 Civ. 10091, 2000 WL 777940, at *10–11 (S.D.N.Y. June 14, 2000) ("The definition of the class is of primary importance, since it enables courts to accurately determine whether the proposed class satisfie[s] the other requirements of Rule 23." (internal quotations and citation omitted)); 5 *Moore's Federal Practice* § 23.21[d] ("[C]ourts commonly examine whether a class is adequately defined before turning to the other requirements for class certification."). The Second Circuit has cautioned against certifying overbroad classes, even under Rule 23(b)(2), which requires a less precise class definition than Rule 23(b)(3). *See Haitian Ctrs. Council, Inc. v. McNary,* 969 F.2d 1326, 1337–38 (2d Cir.1992), *vacated as moot* 509 U.S. 918, 113 S.Ct. 3028, 125 L.Ed.2d 716 (1993); *see also Finch v. N.Y. State Office of Children & Family Servs.,* 252 F.R.D. 192, 198 (S.D.N.Y. 2008) ("A Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class, as Rule 23(b)(2) does not provide for monetary or individualized relief, and does not require notice to allow class members to opt out.").

Here, Plaintiffs define their proposed overarching class as: "All persons who, at any time from July 11, 2004 to the date of certification, leased an apartment in the City of New York directly or indirectly owned in whole or in part by the Pinnacle Enterprises." (Compl. ¶ 150; Pls.' Mem. at 5.) Plaintiffs' proposed class is, on its face, far too broad.

■ Plaintiffs' claims are based on the allegation that Defendants are fraudulently increasing regulated rents to illegal levels, and wrongfully evicting tenants entitled to rent regulation so that their apartments can be deregulated. (*See* Pls.' Reply Mem. in Supp. of Mot. for Class Cert., Aug. 14, 2009 ("Pls.' Reply"), at 1.) They seek, inter alia, prospective injunctive relief restraining the Pinnacle Enterprise from continuing to defraud and harass tenants.

Defendants contend that the proposed class lacks any "logical or factual relation to the claims alleged." (Defs.' Mem. in Opp. to Pls.' Mot. for Class Cert., July 31, 2009 ("Defs.' Opp."), at 5.) Indeed, the Court doubts that the Named Plaintiffs would actually argue that every single tenant in every single Pinnacle apartment building has experienced or is susceptible to the practices alleged. They certainly have not offered the Court any proof that this is so.

Plaintiffs acknowledge that not all of Pinnacle's more than 20,000 apartments are rent-regulated. (*See, e.g.,* Compl. ¶ 47.) Thus, as Defendants point out, there are undoubtedly tenants in Pinnacle buildings whose apartments are unregulated for entirely legal reasons, and who therefore were not and are not targets of Defendants' alleged scheme. For example, a tenant who has leased an unregulated Pinnacle apartment for the entire class period is included in Plaintiffs' proposed class, but that tenant could not have a claim against Defendants (or at least not a claim of the sort asserted here), as he or she would not have been subjected to, and is not susceptible to, Defendants' alleged fraud, extortion and harassment.

Similarly, Plaintiffs' proposed class includes those who live in Pinnacle buildings that were converted to condo buildings during the class period, and who bought their apartments (at prices discounted from the

rates offered non-residents), thus becoming condo owners. They, too, are not susceptible to being bullied in the future by the purported Enterprise.

In addition, the proposed class includes *former* tenants, who leased a Pinnacle apartment at any time between July 11, 2004 and the present, but have since moved out (or died). As discussed more fully below, *infra* Discussion II.C.1, Rule 23(b)(2) allows certification only if "final injunctive relief ... is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Former tenants, even if they were subjected to Defendants' alleged tactics and/or wrongfully evicted, would not benefit from prospective injunctive relief. Thus, they are not properly part of a(b)(2) class.

All of the above does not mean, however, that no class can be certified. A "district court 'is not bound by the class definition proposed in the complaint,'" and is empowered to carve out an appropriate class. *See Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir.1993) (*quoting Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir.1993)); *see also Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 28 (2d Cir. 2003) (noting the "broad discretion of a district judge in the context of class certification"). This Court exercises its discretion to carve out an appropriate class from the overbroad class proposed by Plaintiffs.

The Court redefines the Rule 23(b)(2) class (the "Injunctive Class") to consist of: any person who, as of the date of this opinion, is a tenant in a rent-stabilized or rent-controlled apartment in the City of New York that is directly or indirectly owned in whole or in part by the Pinnacle Enterprise. This narrowed class definition still covers tenants occupying rent-regulated apartments who have not experienced the fraudulent rent increases or intimidation tactics alleged in the Complaint, but who, because their apartments are rent-regulated, are at risk of being the next tenants subjected to such practices. The modified class also sweeps in tenants occupying apartments that are rent-regulated under New York law, but who are presently being charged illegally inflated rents, harassed, or otherwise victimized by the alleged enterprise. However, the narrowed class now properly excludes, inter alia, persons occupying lawfully unregulated units—for example, condo owners—as well as former tenants.

Thus, the Injunctive Class includes the tenants that would—if Defendants are, in fact, engaging in the alleged fraud and harassment—benefit from the injunctive relief sought. Should it become necessary to modify the class definition going forward, the Court has discretion to do so. *See* Fed. R.Civ.P. 23(c)(1); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir.1999).

### 1. Ascertainability

■ In addition to the four Rule 23(a) prerequisites for certification, courts recognize an "implied requirement of ascertainability," which turns on the definition of the proposed class. *See In re IPO*, 471 F.3d at 30. To be ascertainable, the class must be "readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *McBean v. City of N.Y.*, 260 F.R.D. 120, 132–33 (S.D.N.Y.2009). "A class is ascertainable when defined by objective criteria that are administratively feasible," *id.*, and when identifying its members "would not require a mini-hearing on the merits of each case," *see Bano v. Union Carbide Corp.*, No. 99 Civ. 11329, 2005 U.S. Dist. LEXIS 32595, at *16 (S.D.N.Y. Aug. 12, 2005) (internal quotations and citation omitted).

The Injunctive Class satisfies the ascertainability requirement. It is defined by objective criteria—namely, whether a given apartment is rent-regulated under New York law; whether it is owned by the alleged Pinnacle Enterprise; and whether the putative Class member is a tenant in the apartment as of the date of this opinion—thus allowing the Court to readily identify Class members without needing to resolve the merits of Plaintiffs' claims.

Having narrowed the overbroad class proposed by Plaintiffs, the Court turns to whether the redefined Injunctive Class meets the four requirements of Rule 23(a).

## B. The Injunctive Class Satisfies All Four Rule 23(a) Prerequisites

### 1. Numerosity

■ Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Numerosity can be presumed if the class has at least forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Evidence of exact class size or identity of class members is not required to satisfy the numerosity requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Rather, a district court must make a factual finding as to the approximate size of the class based on the evidence presented, and then "apply the legal standard governing numerosity." *See In re IPO*, 471 F.3d at 40 ("Any dispute about the size of the proposed class must be resolved, and a finding of the size of the class, e.g., 50, 100, or more than 200, must be made.").

Here, the record shows that the Injunctive Class is sufficiently numerous. Pinnacle owns and controls approximately 400 multi-tenant buildings in New York City, containing more than 20,000 apartments. (*See* Decl. of Luke McLoughlin in Supp. of Pls.' Mot. for Class Cert., June 30, 2009 ("McLoughlin Decl."), Ex. A (Dep. of Adam Kaplan, June 9, 2009), 238:20–239:5.) Defendants acknowledge that many of those apartments are rent-regulated. (*See* Defs.' Opp. at 5–6.) Thus, the Injunctive Class contains at least hundreds, and almost certainly thousands, of members, such that numerosity can be presumed, *see Consol. Rail*, 47 F.3d at 483. Contrary to Defendants' assertion, this is not at all a case like *Wilner v. OSI Collection Services, Inc.*, 198 F.R.D. 393, 397 (S.D.N.Y. 2001), in which this Court found numerosity lacking because there was not "one iota" of evidence regarding the number of people who had received debt collection letters from the defendant.

In sum, although the evidence does not allow the Court to fix with precision the number of tenants presently occupying rent-regulated Pinnacle apartments, it is clear that joinder of all such persons would be impracticable. Accordingly, the Court finds that the numerosity requirement is satisfied.

### 2. Commonality

■ Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Plaintiffs must "present evidence that a common factual nexus exists among the purported class." *See Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 231–32 (S.D.N.Y.2002). However, the commonality requirement is to be "liberally construed." *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y.2008) (Lynch, J.) (*quoting Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198–99 (S.D.N.Y.1992)); *see also Lewis Tree*, 211 F.R.D. at 231 (noting that "the commonality requirement of Rule 23(a)(2) is usually a minimal burden for a party to shoulder").

The commonality standard does "not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y.2008). Rather, it "require[s] that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Damassia*, 250 F.R.D. at 156 (*quoting Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 153 (S.D.N.Y. 2002)). The commonality requirement may be satisfied where plaintiffs' various alleged injuries "derive from a unitary course of conduct by a single system." *See Marisol A. v. Giuliani*, 126 F.3d 372, 376–77(2d Cir. 1997).

A common factual nexus exists among members of the Injunctive Class. Plaintiffs claim that the Pinnacle Enterprise has victimized—and continues to victimize—tenants occupying rent-regulated apartments, by resorting to a variety of illegal and harassing tactics. While different tenants have been subjected to different "hardball" tactics—for example, Plaintiffs present evidence that some tenants have paid illegally inflated rents as a result of Pinnacle's misrepresentation of purported "improvements" and "renovations" to apartments; that other tenants have been overcharged because Pinnacle has misrepresented the true rental histories of apartments; that some tenants' succession rights have been baselessly challenged; and

that others have been subjected to eviction proceedings even though their rent is fully paid—all these tactics are part of Defendants' alleged scheme to circumvent New York rent regulations.

In other words, all members of the Injunctive Class have been subjected to, or are at risk of being subjected to, one or more of the tactics allegedly used by the Pinnacle Enterprise to further its scheme to (1) fraudulently inflate regulated rents, and (2) wrongfully force rent-regulated tenants to move out so their apartments can be deregulated. The fact that individual Class members have been targeted in different ways does not defeat commonality. *See, e.g., Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 73 (S.D.N.Y.2006) (" '[F]actual differences in the claims of the class do not preclude a finding of commonality.' " (*quoting* 5 *Moore's Federal Practice* § 23.23[2] )); *Bolanos,* 212 F.R.D. at 153 (same). Class members' alleged injuries derive from the alleged Enterprise's unitary course of conduct; thus, Plaintiffs have identified a unifying thread that warrants class treatment.

Core factual and legal issues in RICO cases like this one are often common to a large number of plaintiffs and well suited to class treatment because they can be resolved once, on a uniform and class-wide basis. Here, all members of the Injunctive Class would be required to prove that the alleged Pinnacle Enterprise is a RICO enterprise within the meaning of 18 U.S.C. § 1961(4), and that Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering"—that is, at least two predicate acts of the sort alleged in the Complaint: mail fraud, extortion and violation of the National Stolen Property Act, 18 U.S.C. § 2314. *See* 18 U.S.C. §§ 1961(1), 1962(c).

As the Eleventh Circuit recently explained, RICO claims "are often susceptible to common proof" because

> the very gravamen of the RICO claims is the pattern of racketeering activities.... These are not facts from which jurors will be asked to infer the commission of wrongful acts against individual plaintiffs; these

very facts constitute essential elements of each plaintiff's RICO claims.

*Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1356 (11th Cir.2009) (internal quotations and citation omitted). In *Williams,* plaintiffs alleged that defendant Mohawk, together with various temporary employment agencies, formed a RICO enterprise that hired illegal aliens, depressing Mohawk employees' wages. *Id.* at 1352. Plaintiffs moved to certify a class of Mohawk employees; Mohawk, much like Defendants here, argued that certification would be inappropriate because its practices were "decentralized" and "differed significantly over time," and that "proof of injury was not possible." *See id.* at 1352–54 (internal quotations omitted). The Court of Appeals rejected those arguments, finding that plaintiffs had satisfied the commonality requirement because their complaint presented the "overarching" question, "common to all members of the class," of "whether Mohawk conducted or participated, directly or indirectly, in the conduct of an enterprise's affairs under the federal RICO statute." *Id.* (internal quotations omitted). Plaintiffs' RICO claims in this case similarly present common questions suitable for class treatment.

Plaintiffs' NYCPA claims, like their RICO claims, also present common factual and legal questions. To prevail on their NYCPA claims, all members of the Injunctive Class will need to prove that Defendants engaged in "[d]eceptive acts or practices in the conduct of [their] business, trade or commerce or in the furnishing of any service," N.Y. Gen. Bus. L. § 349(a), and that "the challenged act or practice was consumer-oriented," *Stutman v. Chem. Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000).

Accordingly, for the reasons set forth above, the Court finds that the Injunctive Class has satisfied Rule 23(a)(2)'s commonality requirement.

### 3. Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). As is well recognized, "The commonality and typicality

requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (*citing Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir.1992). As with commonality, typicality is not defeated by "minor variations in the fact patterns underlying individual claims," *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993), as long as the wrong is alleged to have occurred in the same general fashion. For example, in an employment discrimination class action, an individual plaintiff's claim of (to take an example) gender discrimination is "typical," even though some plaintiffs claim to have experienced discrimination in hiring, some in promotion, and some because of sexual harassment. *See, e.g., Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir.1986).

The well-established principle that "[t]ypicality is determined by the nature of the claims brought by the class representatives, not by the particular fact patterns from which they arose," is "particularly true with respect to ... (b)(2) certification." *Brown v. Kelly*, 244 F.R.D. 222, 232 (S.D.N.Y.2007). This is because "where plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them ... [there is] no need for *individualized* determinations of the propriety of injunctive relief." *Id.* (internal quotations and citation omitted); *accord Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir.1994) (noting that "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims," and that "[a]ctions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold").

The typicality requirement is met in this case for many of the same reasons that the commonality requirement is met. Members of the Injunctive Class either have been subjected to, or are in a position to be subjected to, Defendant's alleged fraud and harassment constituting a pattern of racketeering activity. Typicality is, therefore, present.

### a. Issues Related to Injury and Reliance Do Not Frustrate Typicality

The thrust of Defendants' argument against typicality is that Plaintiffs' claims will be dominated by individualized evidence regarding injury and reliance. (*See* Defs.' Opp. at 11–14.) That argument fails. *See, e.g., Brown v. Kelly*, 244 F.R.D. 222, 232 (S.D.N.Y.2007). With respect to injury, differences in the injuries alleged by class members and class representatives in a RICO action are not a sufficient basis to defeat certification. *See, e.g., Trautz v. Weisman*, 846 F.Supp. 1160, 1167 (S.D.N.Y.1994) (certifying class bringing RICO claims based on allegedly dangerous and degrading conditions at nursing home, where nature and extent of individual class members' injuries varied because class members spent different lengths of time at the home, and because they were injured in different ways as a result of the home's day-to-day operations).

Defendants contend not only that Plaintiffs' alleged injuries vary, but that several Named Plaintiffs are atypical because they "have not suffered any injury to business or property and thus have no RICO claim." (*See* Def.'s Opp. at 12.) Plaintiffs, of course, disagree. (*See* Pls.' Reply at 5 ("Almost all of the Named Plaintiffs allege that they have suffered monetary injury as a result of being overcharged by Defendants and defending against baseless eviction proceedings.").)

This dispute does not frustrate typicality. Asserting that the Named Plaintiffs' RICO claims may fail because they have not suffered the requisite injury to "business or property," 18 U.S.C. § 1964(c), does not obscure the fact that all Injunctive Class members' claims arise from the same general conduct, and that they make similar legal arguments to prove Defendants' liability.

Moreover, of the four originally named plaintiffs cited by Defendants as examples of this purported failure, three—Flannagan, Trummer and Casasnovas—have settled, leaving only Kim Powell. (*See* Defs.' Opp. at 12.) Contrary to Defendants' assertion, Powell avers that, in addition to being subjected to harassing surveillance, she was forced to expend resources defending against a baseless eviction suit initiated by Defendants. (*See* Decl. of Kim Powell, June 24, 2009 ("Powell Decl."), ¶ 11; *see also, e.g.,* Decl. of Marjorie Charron, June 25, 2009 ("M. Charron Decl."), ¶ 5 (averring that the Charrons expended about 3,500 hours of their time fighting against Defendants' fraudulent practices, and are seeking compensation for, inter alia, "filing fees" and other "out-of-pocket expenses").) These constitute allegations of actual, out-of-pocket losses cognizable under RICO. *See McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 227 (2d Cir.2008) ("A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must allege *actual,* quantifiable injury.... [T]he general rule of fraud damages is that the defrauded plaintiff may recover out-of-pocket losses caused by the fraud." (internal quotations and citation omitted)); *Dornberger v. Metro. Life Ins. Co.,* 961 F.Supp. 506, 521 (S.D.N.Y.1997) (defining RICO injury as "some actual, out-of-pocket financial loss").

Further, even if it *were* clear at this stage that certain Named Plaintiffs had not suffered injury cognizable under RICO, that would not defeat typicality or prevent them from serving as class representatives in this case. It is well established that when a class brings multiple claims, only one named plaintiff need be able to assert each claim; in other words, a claim may be asserted on behalf of a class if "at least one named plaintiff has suffered the injury that gives rise to that claim." *See Biscone v. JetBlue Airways Corp.* 681 F.Supp.2d 383, 387 (E.D.N.Y.2010); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* No. 05 Civ. 1898, 2005 WL 2148919, at *3, 2005 U.S. Dist. LEXIS 19506, at * 12–13 (S.D.N.Y. Sept. 6, 2005).

Here, Plaintiffs assert claims under both RICO *and* § 349 of the NYCPA, and § 349—which, like RICO, provides for injunctive relief—does not require a showing of injury to business or property. Instead, "a plaintiff must prove 'actual' injury to recover under [§ 349], though not necessarily pecuniary harm." *Stutman v. Chem. Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000). Thus, even if certain Named Plaintiffs alleged actual harm other than pecuniary injury to business or property, that would not make certification inappropriate.

In addition to their arguments regarding injury, Defendants contend that the Named Plaintiffs' claims are not typical because there is "no evidence that any named Plaintiff ever relied on any allegedly false statement by Defendants." (Defs.' Opp. at 13.) In fact, Plaintiffs clearly allege, and have presented evidence tending to show, that certain Named Plaintiffs did, at least in some instances, rely on fraudulent statements made by Defendants—for example, misrepresentations that induced them to pay illegally inflated rents. (*See, e.g.,* Compl. ¶¶ 116–18; M. Charron Decl. ¶ 2; Decl. of Raymond Andrew Stahl–David, June 30, 2009 ("Stahl–David Decl."), ¶ 8.)

Defendants' reliance-based argument fails for an additional reason. As the Supreme Court recently held, "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 2145, 170 L.Ed.2d 1012 (2008). Therefore, where, as here, a RICO claim is predicated on mail fraud, "the person who suffered the loss need not be the one to whom the fraudulent words were directed." *In re Zyprexa Prods. Liab. Litig.,* 253 F.R.D. 69, 190 (E.D.N.Y.2008) (*citing Bridge,* 128 S.Ct. at 2145). And reliance is not an element of Plaintiffs' state-law claims under § 349. *Stutman,* 709 N.Y.S.2d 892, 731 N.E.2d at 612.

Plaintiffs claim that the Pinnacle Enterprise made fraudulent representations—regarding, for example, purported "improvements" to apartments—not only to plaintiffs, "but also to government agencies such as the

DHCR [New York State Division of Housing and Community Renewal], which rely on landlord-submitted information in annually registering legal rent amounts." (Pls.' Reply at 5; *see, e.g.,* M. Charron Decl. ¶¶ 9–10.) Thus, that certain Named Plaintiffs may not allege direct, first-party reliance makes their claims typical, not atypical.

In the end, Defendants' argument that Plaintiffs' claims will be dominated by individualized evidence about injury and reliance goes less to typicality and more to Rule 23(b)(3)'s requirement that common questions must *predominate.* And, as explained below, *infra* Discussion III.A, individualized questions relating to injury and causation do, in fact, prevent Plaintiffs from satisfying the predominance requirement for purposes of a damages class. But Plaintiffs need not show predominance to establish typicality; and predominance is irrelevant to certification of an injunctive class under Rule 23(b)(2). *Jermyn v. Best Buy Stores, L.P.,* 256 F.R.D. 418, 433 (S.D.N.Y.2009) (McMahon, J.).

#### b. Preclusion Issues Do Not Frustrate Typicality

■ Defendants also make the specious contention that preclusion issues defeat typicality. Defendants argue that each Named Plaintiff "has already litigated his or her historical complaints about rent levels, repairs, payment receipts, and succession rights," such that they "will be subject to defenses of issue preclusion, claim preclusion, and contractual release that litigious members of the class will not." (Defs.' Opp. at 11.) In general, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990).

However, claim preclusion requires that the claims at issue "were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corrections,* 214 F.3d 275, 285 (2d Cir.2000). Obviously, Plaintiffs could not have litigated their RICO or NYCPA claims in the Housing Part of New York City Civil Court ("Housing Court") or before the DHCR, as they are forums with limited jurisdiction. *See* N.Y. City Civ.Ct. Act § 110(a); 9 N.Y.Codes R. & Regs. § 2527.1.

Indeed, Defendants' preclusion argument proves too much—it underscores why class treatment *is* appropriate for Plaintiffs' claims. Defendants are correct that there is an aspect of this case that implicates individualized landlord-tenant disputes. But each landlord-tenant dispute is, according to Plaintiffs, more than just that; it is one of the hundreds, if not thousands, of pixels forming something larger, more uniform, and far more serious—a pattern of racketeering actionable under RICO. This is, in short, a RICO class action brought in federal district court, not a collection of landlord-tenant disputes that belong in Housing Court or before the DHCR. Plaintiffs' RICO and NYCPA claims share common factual and legal elements, making certification appropriate.

Accordingly, for the reasons set forth above, the Court finds that the typicality requirement is satisfied.

#### 4. Adequacy of Representation

■ Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). Adequacy of representation is evaluated in two ways: by looking to the qualifications of plaintiffs' counsel and by examining the interests of the named plaintiffs. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000).

The attorneys who have brought this lawsuit are qualified, experienced and more than able to conduct this litigation, no matter how complicated it becomes. Defendants do not argue otherwise. Therefore, to the extent of counsel's adequacy, the fourth Rule 23(a) factor is satisfied.

Defendants' principal objection to the adequacy of the Named Plaintiffs is that they lack standing to seek injunctive relief. In a class action seeking injunctive relief, "the named plaintiffs ... must themselves have standing to seek injunctive relief." *Dodge v. County of Orange,* 103 Fed.Appx. 688, 690 (2d Cir.2004). To establish standing, a plain-

tiff must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Shain v. Ellison,* 356 F.3d 211, 215 (2d Cir.2004) (*quoting City of L.A. v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). A plaintiff "cannot rely on past injury ... but must show a likelihood that he ... will be injured in the future." *Id.* (*quoting Deshawn E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998)); *see O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.").

Here, Defendants assert that although the Named Plaintiffs each allege past wrongdoing by Defendants, their personal grievances with their landlords have (for the most part) been resolved—their rent bills have been corrected, their succession rights are no longer being challenged and they do not have "significant" outstanding demands for repairs. (*See* Defs.' Opp. at 10.) In their brief in support of certification—dated June 30, 2009—the Named Plaintiffs state that they "seek to stop the Defendants from subjecting other tenants to this harassment ... that they have experienced as a result of Defendants' conduct," but do not expressly claim that they themselves are in danger of being harassed again. (*See* Pls.' Mem. at 15.)

However, the fact that Defendants may have tried to moot this lawsuit by settling the personal disputes of the people who brought it is of no moment, at least for purposes of assessing the Named Plaintiffs' standing. Standing is "assessed as of the time the lawsuit is brought." *Comer v. Cisneros.* 37 F.3d 775, 798 (2d Cir.1994). As Plaintiffs point out, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Farez–Espinoza v. Napolitano,* No. 08 Civ. 11060, 2009 WL 1118098, at *4, 2009 U.S. Dist. LEXIS 35392, at *13 (S.D.N.Y. Apr. 27, 2009) (*quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

At the time this case was filed, on July 11, 2007, the grievances asserted by the Named Plaintiffs had not been resolved. Each of the five remaining Named Plaintiffs avers that, as of that date, he or she was paying fraudulently inflated rent—or at least had not been reimbursed for rent overcharges—and/or was being subjected to Defendants' harassment. (*See, e.g.,* M. Charron Decl. ¶ 18; Decl. of Theodore Charron, June 25, 2009 ("T. Charron Decl."), ¶ 18; Decl. of Andres Mares–Muro, June 29, 2009, ¶ 14; Stahl–David Decl. ¶¶ 13, 17–21; Powell Decl. ¶¶ 16–28.) Thus, the Named Plaintiffs have standing to seek injunctive relief on behalf of the Injunctive Class.

If the Court were to take Defendants' standing argument as a mootness argument, it would also fail. Defendants have not carried "the very heavy burden of demonstrating (1) with assurance that there is no reasonable expectation that the conduct will recur, *and* (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *See Comer,* 37 F.3d at 800 (internal citations omitted).

Aside from their standing argument, Defendants do not mount any significant challenge to the adequacy of the Named Plaintiffs. Defendants do not, for example, claim that the interests of the Named Plaintiffs are adverse to those of other class members. Instead, they make a weak attempt to impugn the credibility of two of the originally named Plaintiffs, Russell Taylor and Kim Powell. (*See* Defs.' Opp. at 14.) The Second Circuit has held that, "To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit. Inc.,* 164 F.3d 81, 87 (2d Cir.1998).

However, one of the two targeted plaintiffs, Taylor, has settled his claims, and is no longer a class representative. As for Powell, the deposition testimony cited by Defendants in no way leads this Court to believe that she will be an inadequate representative. (*See* Decl. of Ladan F. Stewart in Opp. to Pls.' Mot. for Class Cert., July 31, 2009, Ex. F

(Dep. of Kim Powell, July 1,2009), 97:20–99:19, 110:19–112:5, 132:15–133:21, 146:4–147:20, 191:11–15.) Powell avers in her declaration that she resides in a rent-stabilized Pinnacle apartment, that she has succession rights to that apartment, and that she has been harassed and intimidated by Defendants. Defendants' argument that Powell is not an adequate class representative because she lacks credibility or candor is merit less.

Finally, the Court notes that the fact that four of the nine originally named Plaintiffs have settled their claims—on December 4, 2009, long after the action was filed—has no bearing on the analysis above, as five Named Plaintiffs remain to represent the Injunctive Class. Although that fact would be relevant to whether each of Plaintiffs' four proposed *subclasses* is adequately represented, the Court is not certifying subclasses.

For the reasons set forth above, the Court finds that the Named Plaintiffs and their counsel meet Rule 23(a)(4)'s adequacy of representation requirement. Thus, the Injunctive Class satisfies all four Rule 23(a) prerequisites.

### C. The Requirements of Rule 23(b)(2) Are Met

A class action may be maintained if all four Rule 23(a) requirements are met, and the action qualifies under at least one of the subdivisions of Rule 23(b). Plaintiffs assert that certification is appropriate under both Rules 23(b)(2) and (b)(3).

A class action may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). "The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed.R.Civ.P. 23(b)(2) advisory committee's note.

### 1. Final Declaratory and Injunctive Relief Is Appropriate Respecting the Class as a Whole

■ Plaintiffs seek a declaratory judgment that Defendants' alleged practices of, inter alia, fraudulently inflating regulated rents, baselessly challenging tenants' succession rights and commencing unfounded eviction proceedings are unlawful, as well as an injunction restraining Defendants from continuing such practices. (Compl. at 69–70.) The declaratory and injunctive relief sought by Plaintiffs is appropriate with respect to the Injunctive Class "as a whole," *see* Fed. R.Civ.P. 23(b)(2), as that Class has been redefined by the Court. Its members—Pinnacle tenants currently occupying rent-regulated apartments—have been subjected to and/or are at risk of being subjected to Defendants' alleged tactics, and would benefit from such relief if the allegations are true.

Defendants argue that (b)(2) certification is improper because Plaintiffs' proposed class includes former tenants and tenants whose apartments are unregulated, for whom prospective injunctive relief would *not* be appropriate. (*See* Defs.' Opp. at 16.) But the Court has narrowed Plaintiffs' proposed overbroad class, and the redefined Injunctive Class no longer includes such tenants, mooting Defendants' objections.

### 2. Defendants Have Acted on Grounds Generally Applicable to the Class

■ Rule 23(b)(2) certification is also appropriate because Defendants have "act[ed] on grounds that apply generally to the class." *See* Fed.R.Civ.P. 23(b)(2). Plaintiffs have presented evidence suggesting that Defendants' alleged fraud and harassment are widespread—for example, between 2004 and 2006, Pinnacle commenced eviction actions against at least 5,000 of its roughly 20,000 tenants; further, an external audit prompted by an OAG investigation found that, between 2002 and 2006, Pinnacle's rent overcharges based on fraudulent "improvements" totaled almost $1 million. (*See* McLoughlin Decl. Exs. B–C, J.) In short, although the Pinnacle Enterprise may employ various tactics in carrying out its alleged scheme to circumvent New York rent regulations, its course of conduct is generally applicable to its rent-regulated tenants, and thus to the Injunctive Class.

**3. Plaintiffs' Request for Money Damages Does Not Render (b)(2) Certification Inappropriate**

 Plaintiffs seek monetary damages in addition to declaratory and injunctive relief. (*See* Compl. at 69–71.) When plaintiffs move "for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages," the court must "assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 164 (2d Cir.2001) (internal quotations and citation omitted).

A district court may certify a(b)(2) class if it finds, "in its informed, sound judicial discretion," that

> (1) the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy. Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Id.* (internal quotations and citations omitted). In *Robinson,* the Second Circuit cautioned district courts not to employ a standard that "forecloses (b)(2) class certification of all claims that include compensatory damages (or punitive damages) even if the class-wide injunctive relief is the form of relief in which the plaintiffs are primarily interested."

*Id.* at 163 (internal quotations and citation omitted).

Here, Plaintiffs' pursuit of monetary damages does not prevent (b)(2) certification of the Injunctive Class. This lawsuit is being driven largely by Plaintiffs' desire to obtain class-wide injunctive relief—to put an end to Defendants' alleged harassment, harassment that is allegedly so extensive as to warrant the moniker "racketeering." Even in the absence of a possible monetary recovery, reasonable rent-regulated tenants would bring this suit to obtain an injunction restraining Defendants from illegally inflating their rents, commencing baseless eviction proceedings and otherwise harassing them. Such injunctive relief would be both necessary and appropriate if the Injunctive Class succeeds on the merits. This is not at all a case where "sham" requests for injunctive relief are providing cover for (b)(2) certification of claims brought essentially for money. Thus, Plaintiffs' requests for declaratory and injunctive relief predominate, and (b)(2) certification is appropriate.

However, this is also not a case where the monetary damages sought by Plaintiffs are merely incidental, or insignificant; instead, they are an important part of Plaintiffs' claims. Plaintiffs seek, inter alia, compensatory and statutory damages under § 349 of the NYCPA, as well as disgorgement of unjust profits—and these damages may very well be substantial, given the allegedly broad scope of Pinnacle's overcharges. Plaintiffs also seek punitive damages pursuant to § 349, and treble damages under RICO.

Where, as here, a class seeks injunctive relief and significant monetary damages, due process concerns militate strongly against maintaining a mandatory (b)(2) class action without the procedural safeguards of notice and the opportunity to opt-out that are provided to members of a(b)(3) damages class. *See Casale v. Kelly,* 257 F.R.D. 396, 408 (S.D.N.Y.2009); *see also Robinson,* 267 F.3d at 165–67; *Eubanks v. Billington,* 110 F.3d 87, 92–94 (D.C.Cir.1997). A court may therefore proceed in one of at least three ways:

> The court may "certify[ ] the class under Rule 23(b)(3) for all proceedings," "certify a Rule 23(b)(2) class for the portion of the

case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages," or "certify the class under Rule 23(b)(2) for both monetary and equitable remedies but exercise its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out, as though the class was certified under Rule 23(b)(3)."

*Casale*, 257 F.R.D. at 408 (*quoting Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581–82 (7th Cir.2000)); *see* 2 *Newberg on Class Actions* § 4:14 (commenting that "when the Rule 23(a) prerequisites are satisfied and declaratory or injunctive relief is sought as an integral part of the relief for the class," courts should conclude that "Rule 23(b)(2) is applicable regardless of the presence or dominance of additional prayers for damages relief," and proceed in one of the ways set forth above).

*Casale* is instructive. In that case, the named plaintiffs alleged that defendants— numerous New York City Police Department officers, among others—had violated their constitutional rights by continuing to enforce certain provisions of a state loitering statute that were declared unconstitutional long ago. 257 F.R.D. at 401. The plaintiffs sought declaratory and injunctive relief, as well as compensatory and punitive damages. *Id.* at 404. They moved for certification of two classes—a (b)(2) injunctive class consisting of persons who had been or would be subjected to enforcement of the unconstitutional provisions, and a(b)(3) damages class limited to those who had been subjected to such enforcement. *Id.* at 401.

Judge Scheindlin granted the plaintiffs' motion and certified "both a Rule 23(b)(2) class and a Rule 23(b)(3) class in order to achieve both equitable and legal relief," noting that "[t]his procedural route avoids the due process concerns raised by the inclusion of monetary relief under the framework of a(b)(2) class." *See id* at 413 n. 123; *see also, e.g., Coco v. Inc. Vill. of Belle Terre*, 233 F.R.D. 109, 115 (E.D.N.Y.2005) (concluding, in RICO action seeking treble damages, that "[a]lthough much of this [requested] relief is monetary, the Court sees no harm in certify-ing an injunctive and declaratory class under Rule 23(b)(2) here because the Court will, as explained below, also certify the proposed classes under Rule 23(b)(3)").

Much as in *Casale* and *Coco*, this Court concludes that the best way forward is to certify a(b)(2) class (the Injunctive Class) for the equitable portion of the case, and a(b)(3) class for the damages portion of the case— although, as explained below, the damages class will, at this stage, be certified only with respect to certain liability issues pursuant to Rule 23(c)(4). There are two principal reasons for proceeding in this fashion.

First, the determination of damages in this case would likely consist largely of individualized showings, on a lease-by-lease basis, of the amount of rent overcharges, and thus would not be suitable for class treatment. It would therefore be inappropriate to certify the (b)(2) Injunctive Class to seek monetary damages in addition to equitable relief.

Second, the composition of the Injunctive Class and a damages class necessarily differs in this case. Plaintiffs fail to recognize this. They propose a single, overarching class (and four subclasses), which they assert may be certified under both Rules 23(b)(2) and (b)(3). But whereas, for example, former Pinnacle tenants are *not* properly included in the Injunctive Class because they would not benefit from prospective injunctive relief, such persons may very well have suffered damages as a result of Defendants' conduct, and therefore *should* be included in any (b)(3) class. Thus, while it can be appropriate, as in *Coco*, to certify the *same* class under both (b)(2) and (b)(3), so that it may seek both injunctive relief and damages, it is even more appropriate, if not necessary, to certify both a(b)(2) class *and* a(b)(3) class here, where the membership of the classes overlaps significantly, but is nonetheless different.

In sum, for the reasons set forth above, the Court certifies the Injunctive Class (as defined by the Court) under Rule 23(b)(2) to address Plaintiffs' claims for declaratory and injunctive relief. The Court now turns to the certification of a damages-seeking class pursuant to Rules 23(b)(3) and (c)(4).

## III. Certification of a Class Pursuant to Rules 23(b)(3) and (c)(4)

Plaintiffs seek certification of a damages class under Rule 23(b)(3) consisting of the following four proposed subclasses:

Subclass 1: Tenants who have received notices from the Pinnacle Enterprise misrepresenting the legal rent by over-inflating the cost or value of renovations/capital improvements made to the apartment.

Subclass 2: Tenants who have received notices from the Pinnacle Enterprise misrepresenting that the legal rent is higher than permitted by the prior rental history of the apartment.

Subclass 3: Tenants who have received notices wrongly asserting that the tenants lack succession rights and therefore are not lawful tenants.

Subclass 4: Tenants not falling into Subclasses 1–3 above who have received notices from the Pinnacle Enterprise wrongly claiming that the tenant has failed to pay rent that is due and owing.

(Pls.' Mem. at 5–8.) Because of individualized issues relating to injury and causation, Plaintiffs have failed—even by dividing the class into subclasses—to satisfy Rule 23(b)(3)'s requirement that common questions predominate over questions affecting only individual class members. However, there are clearly common questions concerning liability that could best be handled on a class-wide basis.

The appropriate course of action at this stage is to certify a(b)(3) class, limited to certain common liability issues pursuant to Rule 23(c)(4). Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues." Fed.R.Civ.P. 23(c)(4). For particular issues to be certified pursuant to Rule 23(c)(4), the requirements of Rules 23(a) and (b) must be satisfied only with respect to those issues. 5 *Moore's Federal Practice* § 23.86[2]. Most significantly, district courts in this Circuit may certify particular issues pursuant to Rule 23(c)(4) even when the action as a whole fails to satisfy the predominance requirement of Rule 23(b)(3). *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225–27 (2d Cir.2006).

As explained more fully below, the Court certifies the following liability issues common to all members of the (b)(3)/(c)(4) class:

(1) whether the alleged Pinnacle Enterprise is a RICO enterprise within the meaning of 18 U.S.C. § 1961(4);

(2) whether Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs," *see* 18 U.S.C. § 1962(c);

(3) whether Defendants engaged in a "pattern of racketeering activity," by committing at least two predicate acts of mail fraud, wire fraud, or violation of the National Stolen Property Act, *see* 18 U.S.C. §§ 1961(1), 1962(c);

(4) whether Defendants engaged in "[d]eceptive acts or practices in the conduct of [their] business, trade or commerce or in the furnishing of any service," *see* N.Y. Gen. Bus. L. § 349(a); and

(5) whether "the challenged act or practice was consumer-oriented," *see Stutman v. Chem. Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000).

### A. Plaintiffs Have Failed to Establish That the Action as a Whole Satisfies the Predominance Requirement

█ Rule 23(b)(3) requires Plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). To satisfy the predominance requirement, Plaintiffs "must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001) (internal quotations and citation omitted), *abrogated on other grounds by In re IPO*, 471 F.3d 24. Here, individualized issues of injury and proximate cause prevent the action as a whole from satisfying the predominance requirement.

It does not appear that the amount of damages suffered by individual Plaintiffs as a result of Defendants' alleged racketeering

can be established through generalized proof. For example, Plaintiffs who claim that they were fraudulently induced to pay illegally inflated rents will need to show, on a lease-by-lease basis, what they were charged by Defendants, whether they paid that rent, and what their rent lawfully should have been. Tenants claiming that they suffered out-of-pocket losses as a result of defending against baseless eviction actions will also need to make individualized showings. The evidentiary hearings required to establish damages for individual Plaintiffs could be substantial.

To prevail on their RICO and NYCPA claims, Plaintiffs must also show proximate causation. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir.2008); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000). Proving that tenants' injuries were proximately caused by Defendants' scheme will require individualized proof. *See, e.g., McLaughlin*, 522 F.3d at 222 (finding, in civil RICO action, that "issues of injury and causation" prevented plaintiffs from satisfying predominance requirement). For example, many Plaintiffs claiming to have paid illegally inflated rents will likely seek to establish proximate causation by showing that they relied upon Pinnacle's fraudulent leases, notices and other misrepresentations. Such showings would necessarily involve evidence that varies from tenant to tenant.

Thus, the Named Plaintiffs fail to establish that the action as a whole satisfies Rule 23(b)(3)'s predominance requirement. Plaintiffs practically acknowledge this shortcoming by suggesting that, "if the Court were to conclude that predominance is not met as to the action as a whole due to questions regarding damages or causation," the Court should at least certify a Rule 23(c)(4) class to address common liability issues. (*See* Pls.' Mem. at 22.)

### B. Definition of the Rule 23(b)(3)/(c)(4) Class

■ Plaintiffs propose (b)(3) certification of the same overbroad class that the Court narrowed in defining the Injunctive Class. *See supra* Discussion II.A. To properly define a class seeking damages in this case, one category of Pinnacle tenants must be added to the membership that comprises the Injunctive Class: *former* occupants of rent-regulated apartments.

This addition is necessary because a person who lived in a rent-regulated apartment during the proposed class period (July 11, 2004 until the date of certification), but who has since moved out (or been wrongfully evicted), may have suffered injury—for example, he or she may have paid illegally inflated rents—as a result of Pinnacle's alleged scheme targeting its rent-regulated tenants. Although such former tenants would not benefit from prospective injunctive relief, and therefore are not included in the Injunctive Class, they may very well be entitled to damages.

Accordingly, the Court defines the Rule 23(b)(3)/(c)(4) class—the "Liability Class"—to include: any person who, at any time between July 11, 2004 and the date of this opinion, was a tenant in a rent-stabilized or rent-controlled apartment in the City of New York directly or indirectly owned in whole or in part by the Pinnacle Enterprise. The Court notes that the Class includes those who lived in a rent-regulated apartment, but then purchased it when their building was converted into a condo or co-op; any such person, before becoming the owner of an unregulated unit, may have been injured by Defendants' racketeering just like any other former occupant of a rent-regulated Pinnacle apartment.

Plaintiffs propose dividing the damages class into four subclasses, but the creation of damages subclasses would not allow Plaintiffs to establish predominance. The amount of damages suffered by each individual plaintiff in this case is not subject to generalized proof. By contrast, the liability issues certified pursuant to Rule 23(c)(4) are common to *all* members of the Liability Class. As explained more fully below, in the event Defendants' liability is established, the Court will consider the various options for resolving the individualized damages questions—for example, the Court could appoint a magistrate judge or special master to preside over individual damages proceedings.

## C. The Liability Class Satisfies the Four Rule 23(a) Prerequisites

The Liability Class satisfies the four Rule 23(a) prerequisites for essentially the same reasons that the Injunctive Class does. *See supra* Discussion II.B. Only a very brief discussion of those requirements is needed.

First, the addition of former rent-regulated tenants to the Liability Class makes it larger than the Injunctive Class. Thus, the Liability Class, like the Injunctive Class, satisfies the numerosity requirement.

With respect to commonality and typicality, the liability issues now being certified pursuant to Rule 23(c)(4) are precisely the common questions of law and fact that led the Court to find that the Injunctive Class satisfies those requirements. Naturally, "when a Court chooses to limit class certification only to certain common issues under Rule 24(c)(4), those issues necessarily predominate and satisfy the first element of Rule 23(b)(3)." *Leib v. Rex Energy Operating Corp.*, No. 06 Civ. 802, 2008 WL 5377792, at *10 (S.D.Ill.Dec. 19, 2008); *accord* 2 *Newberg on Class Actions* § 4:23 ("When a court decides to limit a class action with respect to particular common issues only, such limitation will necessarily afford predominance as to those issues."). It therefore goes almost without saying that the related requirements of commonality and typicality are also met, as they are here. *Cf. Simon v. Philip Morris*, 200 F.R.D. 21, 29 (E.D.N.Y.2001) (Weinstein, J.) ("Rule 23(c)(4)(A) accords district judges the discretion to certify a class action as to particular issues in a manner that treat[s] common things in common and distinguishes the distinguishable, thereby satisfying Rule 23(a)'s requirements of commonality and typicality." (internal quotations and citation omitted)).

Nor does the addition of former Pinnacle tenants to the Liability Class threaten typicality (or adequacy of representation), even though all five Named Plaintiffs are *current* occupants of Pinnacle apartments. The Pinnacle Enterprise has allegedly targeted rent-regulated tenants through the same general course of conduct, from which the claims of *all* Plaintiffs arise; that certain members of the Liability Class may no longer reside in Pinnacle buildings, or that they may have purchased their rent-regulated apartments during the class period, are minor variations in the fact patterns underlying individual claims that do not defeat typicality. *See Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993).

Finally, the Named Plaintiffs and their counsel will adequately represent the Liability Class for essentially the same reasons they will adequately represent the Injunctive Class. Thus, the Liability Class satisfies all four Rule 23(a) requirements.

## D. The Superiority Requirement Is Satisfied

In addition to requiring predominance, Rule 23(b)(3) requires Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Factors relevant to the superiority analysis include: class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. *Id.*

A class action is the superior method for resolving the common liability issues certified herein. The Liability Class contains at least hundreds, and almost certainly thousands, of members; and, as the Named Plaintiffs point out, the claims of many individual tenants are probably too small to make litigating on their own worthwhile. It is therefore in the interest of Class members to litigate this case as a class action, not as separate actions.

Further, litigating the liability elements of the claims of damages-seeking Plaintiffs in a single forum is the most efficient way to proceed in this case. Forcing individual Class members to separately and repeatedly litigate the liability questions common to their RICO and NYCPA claims would be highly inefficient.

Finally, the Court does not foresee any management difficulties that would make

certification inappropriate. Although, as explained above, individualized issues of injury and causation are present and significant, that is not a concern at this stage, as the (b)(3) class is being certified only with respect to common liability issues.

Defendants' only challenge to superiority rests on their contention that the superior forum for this litigation is New York State's "administrative and judicial system for the adjudication of claims based on its rent control and rent stabilization laws." (*See* Defs.' Opp. at 22.) This is merely a variation of Defendants' ill-conceived argument that preclusion-related issues frustrate typicality, and it is equally merit less. Plaintiffs bring RICO and NYCPA claims predicated on Defendants' common course of allegedly fraudulent and harassing conduct—they do *not* bring a collection of unrelated overcharge claims that belong in Housing Court or before the DHCR. Whether Defendants' alleged scheme violated RICO and the NYCPA are issues best resolved on a class-wide basis in federal court.

Accordingly, the Court finds that Rule 23(b)(3)'s superiority requirement is satisfied. As established above, the Liability Class also meets the four Rule 23(a) requirements. And, although Plaintiffs have failed to demonstrate that the action as a whole satisfies Rule 23(b)(3)'s predominance requirement, that requirement is met for the certified issues. Thus, all of the Rule 23(a) and (b)(3) prerequisites are satisfied; the Court now turns to the question of whether certification of particular issues pursuant to Rule 23(c)(4) is, in fact, the sensible approach in this case.

### E. "Issue" Certification Pursuant to Rule 23(c)(4) Is Appropriate

■ Under Rule 23(c)(4), "When appropriate, an action may be maintained as a class action with respect to particular issues." Fed.R.Civ.P. 23(c)(4). Where, as here, "the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement," "a court may employ Rule 23(c)(4)(A) to certify a class on a particular issue." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir.2006). The Second Circuit has expressly encouraged district courts to "take

full advantage of this provision to certify separate issues in order … to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 167–68 (2d Cir.2001) (internal quotations and citation omitted).

Certifying a Liability Class of damages-seeking tenants will materially advance this litigation by resolving, for all such tenants, the disputed issues of whether Defendants' alleged scheme violated RICO and/or the NYCPA. Issue certification is especially appropriate in a RICO case like this one, where Defendants' liability can be determined once, on a class-wide basis, through common evidence. *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663 (7th Cir.2004) (Posner, J.).

In *Carnegie*, the plaintiff class brought various state and federal claims, including RICO claims, alleging that the defendant bank and tax preparer had fraudulently led plaintiffs to believe that the tax preparer was acting as their fiduciary, when the tax preparer was, in fact, engaged in self-dealing. 376 F.3d at 658–59. The Seventh Circuit acknowledged the presence of "individual damages issues," but affirmed the district court's certification of a class limited to prosecuting the RICO claim and one breach of contract claim. *See id.* at 659–61.

Judge Posner reasoned that, "The question whether RICO was violated can be separated from the question whether particular intended victims were injured, and thus can … be resolved in a single proceeding with the issue of injury parceled out to satellite proceedings." *Id.* at 663. Indeed, the Advisory Committee's Notes to Rule 23(c)(4) seem to contemplate issue certification in such cases: "For example, in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." Fed.R.Civ.P. 23(c)(4) advisory committee's note.

As the *Carnegie* court noted, "there is a big difference from the standpoint of man-

ageability between the liability and remedy phases of a class action." 376 F.3d at 661. There, as here, "litigating a violation of RICO" was appropriate for class treatment; on the other hand, "Whether particular members of the class were defrauded and if so what their damages were are another matter, and it may be that if and when the defendants are determined to have violated the law separate proceedings of some character will be required to determine the entitlements of the individual class members to relief." *Id.*

The prospect of separate proceedings to determine damages, however, "need not defeat class treatment of the question whether the defendants violated RICO," since "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Id.* The Second Circuit has endorsed several such solutions, including: "appointing a magistrate judge or special master to preside over individual damages proceedings," "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages," "creating subclasses," or "altering or amending the class." *See In re Visa Check,* 280 F.3d at 141. Here, should the Liability Class succeed in proving that Pinnacle's alleged scheme violated RICO and/or the NYCPA, the Court will consider all such management tools for addressing individualized issues of causation and damages.

In opposing issue certification pursuant to Rule 23(c)(4), Defendants point to *McLaughlin v. American Tobacco Co.,* 522 F.3d 215 (2d Cir.2008). In *McLaughlin,* the Second Circuit decertified a(b)(3) class asserting RICO claims because it failed to satisfy the predominance requirement; in the opinion's final paragraph, the panel also refused plaintiffs' alternative request for issue certification. *See id.* at 234. *McLaughlin* is distinguishable on at least two grounds.

First, in concluding that issue certification would not "materially advance" the litigation because too many individual issues would remain for adjudication, the court pointed, first and foremost, to the issue of *reliance.*

*See id.* at 222–23, 234. The panel emphasized that in a RICO action predicated on mail or wire fraud, each plaintiff must "demonstrate that *he* relied on the defendant's misrepresentation." *See id.* at 222–23 (emphasis added). However, that is no longer good law. In *Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), decided two months after *McLaughlin,* the Supreme Court unanimously held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Id.* at 2145. Further, it is well settled that reliance—whether by the plaintiff or by a third party—is not an element of a claim under § 349 of the NYCPA. *Stutman,* 709 N.Y.S.2d 892, 731 N.E.2d at 612.

*McLaughlin* is also distinguishable because the efficiency and management reasons for certifying an issues class in this case are more compelling than they were in *McLaughlin.* In *McLaughlin,* the Second Circuit considered a class that had been certified only pursuant to Rule 23(b)(3)—all parties conceded that (b)(2) (or (b)(1)) certification was not an option. 522 F.3d at 222 n. 4. Here, the Court has certified a sister class, the (b)(2) Injunctive Class, to resolve the equitable portion of Plaintiffs' claims. Although it would not be appropriate to certify the damages portion of Plaintiffs' claims under Rule 23(b)(2)—both because the damages issues appear to be ill-suited for class treatment, and because the membership of the classes differs—the fact remains that the Injunctive Class, in order to obtain the declaratory and injunctive relief it seeks, will attempt to prove that Defendants' alleged scheme violated RICO and the NYCPA. In other words, the Injunctive Class will litigate the same liability issues now certified pursuant to Rules 23(b)(3) and (c)(4), presumably through evidence largely common to both classes. It would be highly inefficient for the Injunctive Class to litigate Defendants' liability on a classwide basis, only to force plaintiffs seeking damages to litigate Defendants' liability in separate, individual actions.

Instead, the sensible way forward is for the (b)(2) Injunctive Class to litigate all aspects of Plaintiffs' claims for declaratory and injunctive relief, while the (b)(3)/(c)(4) Class simultaneously litigates Defendants' liability. And, in the event Defendants' alleged scheme is found to have violated RICO and/or the NYCPA, the Court will consider its options for resolving individual damages issues.

Accordingly, for the reasons set forth above, the Court concludes that Rule 23(c)(4) issue certification is appropriate in this case.

**F. Substitution of a New Named Plaintiff to Represent Proposed Subclass 3 Is Unnecessary** Plaintiffs acknowledge that, as a result of four of the nine originally named plaintiffs having settled, proposed Subclass 3—tenants whose succession rights have been wrongly denied—"is currently without a class representative." (Ltr. from Pls.' Counsel to Court, Jan. 26, 2010 (Docket No. 95).) Plaintiffs propose "to amend the complaint . . . to add a new Named Plaintiff to represent Subclass (3) after the Court has considered and ruled on the motion for class certification." (*Id.*)

Because the Court is not certifying subclasses, it is not necessary to add a new named plaintiff to serve as the representative of proposed Subclass 3. Accordingly, Plaintiffs do not have leave to amend their Complaint.

**G. Notice to Members of the (b)(3)/(c)(4) Class**

Notice must be afforded to the Liability Class, which seeks damages and is being certified pursuant to Rules 23(b)(3) and (c)(4). Rule 23(c)(2) provides that, in any class action maintained under Rule 23(b)(3), notice shall be given to the class in the best practicable manner. Fed.R.Civ.P. 23(c)(2). As required by Rule 23(c)(2), the notice shall advise each potential class member that he or she can choose to opt out of the class; that the judgment, whether favorable or not, will bind all class members who do not choose to opt out; and that individual class members who do not request inclusion may, if they so desire, enter an appearance through counsel. *Id.*

Plaintiffs' counsel must present to the Court, within fourteen days of the date of this decision, a proposed manner of giving notice to members of the (b)(3)/(c)(4) Class. Defendants shall thereafter have ten days to offer any objections or comments regarding the method proposed.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification is granted in part and denied in part. By way of this decision, the Court (1) certifies the Rule 23(b)(2) Injunctive Class—comprised of all persons who, as of the date of this opinion, are tenants in rent-regulated apartments in New York City directly or indirectly owned in whole or in part by the Pinnacle Enterprise—to resolve the equitable portion of Plaintiffs' claims; (2) certifies the Rule 23(b)(3) Liability Class—comprised of all persons who, at any time between July 11, 2004 and the date of this opinion, were tenants in rent-regulated apartments in New York City directly or indirectly owned in whole or in part by the Pinnacle Enterprise—limited pursuant to Rule 23(c)(4) to resolving the issues of whether Defendants' alleged scheme violated RICO and the NYCPA; (3) appoints the five Named Plaintiffs as Lead Plaintiffs; (4) appoints the Named Plaintiffs' counsel, Jenner & Block LLP, as Lead Counsel; and (5) directs Plaintiffs' counsel to submit to the Court within fourteen days a proposed method of providing notice to members of the (b)(3)/(c)(4) Class.